Jesse **COLPO**, Plaintiff,

v.

**HIGHWAY TRUCK DRIVERS AND HELPERS, LOCAL 107, of the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, an unincorporated association, Defendant.**

**Civ. A. No. 2401.**

United States District Court
D. Delaware.

Dec. 13, 1961.

H. B. Rubenstein, of Leshem & Rubenstein, Wilmington, Del., for plaintiff.

David B. Coxe, Jr., of Coxe, Booker, Walls & Cobin, Wilmington, Del., and

Richard H. Markowitz, of Wilderman, Markowitz & Kirschner, Philadelphia, Pa., of counsel, for defendant.

CALEB M. WRIGHT, Chief Judge.

Plaintiff, in a complaint dated December 7, 1961, alleges that on November 18, 1961, he was nominated as a candidate for the office of Recording Secretary of the defendant Local, to be voted upon at an election scheduled to commence December 16, 1961. It is further alleged, that the Election Committee of the defendant Local ruled plaintiff ineligible to be a candidate for the aforementioned office. Exhibit B annexed to the complaint shows that the ruling was predicated upon provisions of the International Constitution of the Union, wherein continuous good standing for a period of 24 months prior to nomination is a prerequisite for eligibility as a candidate; records of the Local purportedly showed that plaintiff had not complied with this requirement because on two occasions over the relevant two year period he was late with monthly dues payments. Upon protest and appeal to International President, James R. Hoffa, the ruling of the Local Election Committee was sustained. The complaint concludes that the ruling violates plaintiff's rights under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. §§ 401–531.[1] Specific violations of Title I, §§ 101(a) (1) and 102, and Title IV, § 401(e)[2] are alleged. A prompt hearing before the court is requested. The prayers for relief include a ruling of eligibility for candidacy, a decree compelling the Local to insert plaintiff's name on the ballot, and an injunction against further interference with plaintiff's quest for office. It is alleged that jurisdiction of the court to entertain the cause is conferred by the previously cited provisions of the Act and 28 U.S.C.A. § 1331.

At the outset court and counsel perceived a serious question as to the exist-

---

1. Hereinafter referred to as the LMRDA or as "the Act".

2. 29 U.S.C.A. §§ 411(a) (1) and 412, and 29 U.S.C.A. § 481(e), respectively.

ence of jurisdiction.[3] Accordingly, this issue was divorced from the merits and oral argument heard thereon on December 9, 1961. In the course of argument counsel for plaintiff was granted leave to amend the complaint to include a prayer for declaratory relief under 28 U.S. C.A. §§ 2201 and 2202, and to allege 28 U.S.C.A. § 1337 as an additional basis of jurisdiction.

The court is of the opinion that jurisdiction over the subject matter is lacking.

Sections 101(a) (1) and 102 of Title I of the LMRDA provide:

"Sec. 101. (a) (1) Equal Rights. —Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

\* \* \* \* \* \*

"Civil Enforcement

"Sec. 102. Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located."

Pertinent portions of Title IV of the LMRDA state:

"\* \* \* [§ 401] (e) In any election required by this section which is to be held by secret ballot a rea-

sonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. \* \* \*

\* \* \* \* \* \*

"Sec. 402. (a) A member of a labor organization—

"(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

"(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

"(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the

---

**3.** While counsel orally raised the question of jurisdiction no written motion was filed. The court therefore for procedural purposes considers the question of jurisdiction as raised on its own motion.

United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this title and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.

\*   \*   \*   \*   \*   \*

"Sec. 403. No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this title. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this title. The remedy provided by this title for challenging an election already conducted shall be exclusive."

The plaintiff seeks judicial protection of his asserted right to be a candidate. Perusal of Title I satisfies the court that nowhere among the rights enumerated therein is the right to be a candidate found. By its express terms, § 102 restricts Federal District Court jurisdiction to those causes asserted by plaintiffs whose Title I rights have been violated.[4] Since the right of candidacy is not afforded by Title I, no remedy for its violation is available under § 102 of the LMRDA. This conclusion is supported by several decisions of other District Courts.[5]

The right of candidacy is derived exclusively from the provisions of Title IV, § 401(e). Section 402 is the exclusive source of jurisdiction to grant relief for violations of rights enumerated in § 401.[6] This procedure is applicable only after the election has been held.[7] The election must have run to completion before jurisdiction under § 402 may be exercised. Plaintiff's attempt to invoke the jurisdiction of this court under Title IV is thus premature. The civil action contemplated in § 402 confers standing to sue exclusively upon the Secretary of Labor, after a complaint is filed with him by a member who has met the requirements of § 401(a) (1) and (2). The Secretary may institute the proceeding only after scrutiny of the complaint and a finding of probable cause that a violation of § 401 has occurred. This administrative screening process is a necessary prerequisite to a civil action under § 402. The Secretary's presence as a party litigant in the civil action which may subsequently be brought is no less crucial; in such capacity he brings all of his expertise to bear on the matter pending, thereby greatly assisting the court in reaching a sound disposition which comports with the delicately balanced policy considerations implemented by Congress in Title IV. Plaintiff here

---

4. That is, " \*   \*   \* person[s] whose rights secured by the provisions of \*   \*   \* [Title I] have been infringed by any violation [of that same Title] \*   \*   \*." See the full text of § 102 set forth in the main body of the opinion, supra.

5. See Johnson v. San Diego Waiters and Bartenders Union, Local 500, 190 F. Supp. 444 (D.C.S.D.Cal.S.D.1961) at pages 447–448; Flaherty v. McDonald, 183 F.Supp. 300 (D.C.S.D.Cal.C.D.1960) at page 303; Byrd v. Archer, 38 Labor Cases 68,832 (D.C.S.D.Cal.C.D.1959) at page 68,833.

6. Section 402(a), and (b); note also § 403, text, supra. Section 402 is a post election remedy which may be brought by the Secretary of Labor upon a complaint filed and a finding of probable cause. A reading of § 403 with § 402 gives rise to the inference that State courts are the exclusive avenues for pre-election redress.

7. Section 402 is a remedy for challenging an election or compelling one to be held in compliance with the provisions of § 401. See particularly § 402(b), text, supra.

seeks vindication of his right of candidacy under § 401(e) by bringing a suit in his own behalf, thereby eliminating the vital role of the Secretary of Labor. Yet § 402 is the sole source of remedy for a litigant seeking redress for a § 401 violation before a Federal District Court, and the participation of the Secretary of Labor in such action, in accordance with the Congressionally established procedure, is mandatory. Plaintiff's cause under Title IV is therefore both premature and procedurally irregular; each defect presents an insurmountable barrier to the exercise of jurisdiction. Johnson v. San Diego Waiters, etc., and Byrd v. Archer, note 5, supra, reached this same result when confronted with similar situations.

The determination that § 102 of Title I and § 402 of Title IV do not suffice to confer jurisdiction in the factual context presented by the instant case finds additional support when these provisions, along with § 403, are read against the chronology of events comprising the legislative history of the LMRDA.[8] Shortly after the 86th Congress convened, Senator Kennedy introduced S. 505 on January 20, 1959.[9] This was referred to Committee and hearings were held; changes ensued in executive session and the revised bill was reported and introduced as S. 1555 on April 14, 1959. After numerous amendments, S. 1555 passed the Senate on April 25th. The House Committee commenced hearings on S. 1555 in March, 1959. On July 30th this Committee reported out H.R. 8342. In the interim, Congressmen Landrum and Griffin introduced identical bills—H.R.

8400 and H.R. 8401—on July 27th. H.R. 8400 and H.R. 8401 with minor amendments passed the House on August 13th as H.R. 8342; its text was substituted for that of S. 1555 and a conference with the Senate requested. The Committee of Senators and House members was selected and agreement was reached on September 2nd, after twelve days of deliberation.[10] Both the Bill of Rights and the election provisions of Title IV are creatures of the Senate, rather than the House, and hence focus hereinafter will be on developments in that branch of the legislature.

S. 505 [11] contained no Bill of Rights; the election provisions contained no guarantee of the right of candidacy. The procedure for enforcement, § 302, involved the Secretary of Labor in a procedure virtually identical to § 402 of the LMRDA; this post election remedy was made exclusive by § 303 of S. 505; rights and remedies previously available under State law were pre-empted.

S. 1555 [12] as reported likewise contained no Bill of Rights. But § 301(d) of the election provisions contained therein guaranteed the right of candidacy for union office; indeed, § 301(d) of S. 1555 as reported and § 401(e) of the present LMRDA are identical in terms. Section 302, the procedure for enforcement, was the same as its counterpart in S. 505 and virtually identical to § 402 of the LMRDA. In addition to the change granting the right of candidacy under § 301, § 303 of S. 1555 as reported no longer purported to make § 302 pre-emptive; § 303 was identical in terms to § 403 of the LMRDA.[13] Thus the right to be a candi-

8. See note 6, supra.

9. Commonly referred to as the Kennedy-Ervin bill.

10. See Aaron, The LMRDA of 1959, part I, 73 Harvard L.Rev. 851 at pp. 852–855 (1960), for this general review of chronology. For the complete chronology of legislative history of the LMRDA, see the two volumes entitled "Legislative History of the LMRDA of 1959", U. S. Govt. Printing Office (1959), at page XI (Aug. 13th) in both volumes.

11. Reproduced in entirety in I Legislative History of the LMRDA of 1959, page 29 et seq., U. S. Govt. Printing Office (1959).

12. Id. at 338 et seq.

13. The American Civil Liberties Union objected to the exclusiveness of this remedy as heretofore discussed in A Labor Union "Bill of Rights"—Democracy in Labor Unions—The Kennedy-Ives Bill; Statements by the ACLU embodied in a pamphlet published Sept.,

date, the procedure for enforcing this right in the District Courts, and the explicit retention of existing pre-election remedies at State Law developed independently of the Bill of Rights. It was never intended to open the doors of the federal courts to litigants seeking pre-election redress; the sole remedy in the Federal tribunals was essentially that which ultimately appears in the LMRDA

as § 402, a post election remedy which may be brought only by the Secretary of Labor.[14]

It was during the debate on S. 1555 as reported that the Bill of Rights was added as an amendment. It was also during this time that the predecessor of the general anti pre-emption provision, § 603, of the LMRDA first appeared as § 602 of S. 1555 as passed by the Senate.[15] This

1958. At pages 30–31, in commenting on the election provisions of the Kennedy-Ives Bill [identical to S. 505], it is stated:
"* * * 4. The section providing for enforcement of the regulations covering union elections forecloses recourse to the State courts simply in the name of uniform procedure. But this would limit rather than increase union democracy. For example:
a) The bill provides no protection unless the Secretary of Labor finds probable cause. If he does not move, the individual union member has no way of challenging either the election procedure or the Secretary's failure to act.
b) The bill provides no way of correcting misconduct prior to the election. If candidates are disqualified and stricken from the ballot, if members are told that they will not be eligible to vote, if the nominating procedure is abused, or if the election is set for an improper time or place, no relief is available until after the election is held and officers installed. Then * * * remedies must be exhausted, investigation made by the Secretary, an action filed in the District Court and then possibly a new election held. In the meantime, the wrongfully elected officers will continue to function.
At the present time State courts are available to correct the situation before the election where the misconduct is clear. This speedy remedy should not be destroyed.
c) The bill regulates various aspects of the election process, including nominations, campaigning and balloting. This raises serious dangers that States may be pre-empted from intervening in any related areas. * * *"
Professor Cox registered similar objections at the hearings on S. 505. See: *Hearings Before the Subcommittee on Labor and Public Welfare: U. S. Senate, 86th Congress, First Session, on S. 505, etc.*, at page 135 (Statement of Prof. Cox, January 29, 1959):
"* * * [After stating that the Bill achieved the commendable objectives of

(1) precluding states from applying local statutes undertaking to regulate the conduct of elections which would prove burdensome, (2) excluding private suits and centralizing control in the Secretary of Labor, and (3) excluding suits at state law challenging the validity of an election] * * * but I have been persuaded that the language used in the * * * bill * * * [to accomplish these objectives] * * * was much too broad. In a few States, actions have been successfully maintained in advance of a union election to compel the officers to comply with provisions of the constitution and by-laws such as putting a candidate's name on the ballot, permitting a classification of members to vote, or giving adequate notice of the elections. These remedies are often more effective than a challenge to the validity of an election after it has been held. They present (sic) the evil before it is accomplished. It is not impossible that other State courts will find it possible to give similar relief enforcing the union constitution and by-laws in advance of the election. Such proceedings would not interfere with the Federal Policy because they do no more than compel the union officers to comply with the rules voluntarily adopted by the members."

14. The Senate Report on S. 1555 states in part:
"* * * Section 203 of the bill specifically preserves rights and remedies which union members have under existing law to insure compliance with provisions of a union's constitution and by-laws relating to elections prior to the conduct of an election. However, since the bill provides an effective and expeditious remedy for overthrowing an improperly held election and holding a new election, the Federal remedy is made the sole remedy and private litigation would be precluded. * * *" Note 11, supra, at p. 417.

15. See colloquy of Senators Holland and Kennedy, 105 Cong.Rec. 5816–5822, Sen-

was identical to the present § 603 [16] of the LMRDA.

It seems clear from the chronology of legislative history therefore that the right of candidacy is peculiarly a creature of Title IV and cannot be enforced prior to the conduct of an election by resort to § 102 of Title I. The exclusive avenue through which redress may be sought in a Federal Court for denial of this right is § 402—a post election remedy which must be instituted by the Secretary of Labor.

The original election provisions of S. 505, wherein the exclusive remedy was a federal post election remedy brought by the Secretary, were predicated upon the thought that there was an overriding need for uniformity in the regulation of union election processes. Subsequently, it was realized this broad pre-emptive statutory provision could be limited so as to permit resort to State tribunals for pre-election vindication of election rights with no encroachment upon uniformity of substantive regulation.[17]

Professor Clyde Summers, one of the foremost experts in the law of internal union affairs, reads the first sentence of § 403 of the LMRDA as declarative of the exclusive nature of the substantive provisions of Title IV. He argues that State courts are expressly permitted to grant pre-election relief for violations of § 401 by the second sentence of § 403, notwithstanding that this sentence seem-

ingly restricts these tribunals to union constitutions and bylaws as sources of substantive law. The last sentence of § 401(e), providing that union elections "* * * be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this title. * * * *", is said to incorporate these instruments, thereby elevating them to the level of federal law. Thus the second sentence of § 403 seemingly restricts State courts to the application of some, but not all, of the substantive regulations of § 401 in granting pre-election relief. The result of such a construction of § 403 would render State courts powerless to grant a remedy when the constitution or bylaws under consideration clearly contravene § 401, for these tribunals would then limit themselves to these instruments in providing relief. This anomalous result therefore strongly argues in favor of a different construction of the second sentence of § 403, whereby State courts are permitted to look to § 401 in its entirety as a source of substantive law in pre-election actions.[18] If the sources of substantive law to be applied by the State courts were in issue here this court might well accept this view.[19] But he further argues that the exercise of jurisdiction to grant pre-election redress for a violation of § 401 by Federal District Courts is in no way debilitative of uniform substantive regu-

ate, April 22, 1959. Note particularly the remarks of Sen. Holland, id. at 5818.

16. Section 603.(a) of the LMRDA provides:
  "Except as explicitly provided to the contrary, nothing in this Act shall reduce or limit the responsibilities of any labor organization or any officer, agent, shop steward, or other representative of a labor organization, or of any trust in which a labor organization is interested, under any other Federal law or under the laws of any State, and, except as explicitly provided to the contrary, nothing in this Act shall take away any right or bar any remedy to which members of a labor organization are entitled under such other Federal law or law of any State."

17. See notes 8 through 13, supra, and accompanying text.

18. Summers, Pre-emption and the Labor Reform Act—Dual Rights and Remedies, 22 Ohio State Law Journal 118, at 135–140 (1961).

19. This construction comports with the general rule that except where jurisdiction over the various types of federal claims is exclusively vested in federal tribunals—and the argument presupposes that such is not the case under § 403—State courts must take cognizance of federal claims asserted in actions pending before them. Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947). See generally 1 Moore's Federal Practice ¶ 0.201 (2nd Ed.).

lation under Title IV, and hence is permissible under 28 U.S.C.A. § 1337.[20] Hence the last sentence of § 403 should be interpreted as simply pre-empting the States and their tribunals from reviewing the propriety of union elections after the ballots are once cast. This latter view does not seem to be warranted or necessary. In light of the chronology of legislative history of the LMRDA, § 403 must be read as a retreat from the broadly pre-emptive and exclusive post election remedy contained in S. 505. Section 403 undoubtedly serves to permit union members to seek pre-election redress in State courts. The scope of the substantive rights cognizable in such actions should probably be those embodied in the entirety of § 401 of the LMRDA to avoid the potentially anomalous result suggested by Professor Summers. But it does not follow that § 403, even when coupled with 28 U.S.C.A. § 1337, permits Federal District Courts to exercise jurisdiction over rights asserted under Title IV prior to the conduct of an election simply because this assertion of the judicial power comports with the paramount concern of uniform regulation. For the chronology of legislative history of the LMRDA shows that the Kennedy-Ervin antecedent of § 403 restricted the activity of Federal Courts in this area to post election situations, as well as pre-empting the States. The subsequent retreat from this extreme position concerned the suspension of the pre-emptive effect of the original Kennedy-Ervin provision. Suspension of the pre-emptive effect of § 403 and its antecedents is one thing, enlargement of federal jurisdiction quite another. Resort to State courts prior to the election was specifically approved, but nowhere in the subsequent developments of the legislation can a change of Congressional intent, enlarging federal jurisdiction to include pre-election affairs, be found.

Counsel for plaintiff has vigorously urged that § 603 of the LMRDA should be read in conjunction with 28 U.S.C.A. § 1337;[21] it is contended that the wording of § 603(a), " * * * except as explicitly provided to the contrary, nothing in this Act shall take away any right or bar any remedy to which members of a labor organization are entitled under such other Federal law or law of any State * * * ", provides the plaintiff here with pre-election access to the District Court for protection of the right of candidacy when coupled with 28 U.S.C.A. § 1337. Serio v. Liss, 300 F.2d 386 (1961), a recent Third Circuit Court of Appeals opinion, is cited as authority for this proposition. The Serio case involved a prayer for declaratory relief sought by a union officer confronted with impending removal from his position, ostensibly under § 504 of the LMRDA. Serio sought an adjudication to the effect that the provisions of § 504 were inapplicable to him. The LMRDA is silent as to what remedy, if any, inheres in a union officer under such circumstances. The court there held that declaratory relief would lie when predicated upon § 1337 of 28 U.S.C.A. The paramount Congressional policy underlying § 504 was said to "be of such importance as to permit its application through adjudications by the national courts."[22]

The court is of the opinion that this rationale is of no assistance to plaintiff in the factual context of the present case. Serio contains no discussion or construction of § 603(a) of the LMRDA. Section 603 is actually a general anti pre-emption provision, explicitly retaining existing rights and remedies except where other-

---

20. See note 21, infra.

21. 28 U.S.C.A. § 1337 provides:
"Commerce and anti-trust regulations
"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies. June 25, 1948, c. 646, 62 Stat. 931."
The LMRDA is an "Act of Congress regulating commerce" as § 2(c) of the Declaration of Findings, Purposes, and Policy makes clear.

22. See Serio v. Liss, 300 F.2d 386, 389, No. 13,571, filed November 17, 1961.

wise provided in the more detailed provisions of the Act.[23] It cannot be reasonably interpreted as a conferment of jurisdiction over the assertion of rights created by the Act; by its terms it refers to "* * * right[s] * * * under such *other* Federal law or law of any State. * * *" (emphasis supplied). Moreover, the situation confronting the court in Serio involved a potential injustice imposed in the absence of any explicit statutory grant of jurisdiction under the LMRDA, and § 504(b) subjected the plaintiff in Serio to the possibility of the imposition of heavy criminal penalties.[24] The situation demanded a prompt adjudication and the court held that Federal jurisdiction could be properly exercised under the circumstances. In the present case the plaintiff may avail himself of the remedy afforded by § 402 after the election is conducted. This remedy is exclusive; the Federal Courts are not to become involved in the supervision of union elections except under the limited provisions of § 402, as § 403 and the legislative history of the LMRDA make clear. This court is reluctant to extend the broad thrust of Serio into the realm of union elections. To do so would frustrate the carefully designed procedure established by Congress in § 402, where-

in the role of the District Courts is precisely delimited.

To be sure, the right of candidacy is created by the LMRDA; to this extent it "arises under" a law of the United States. But this alone is not necessarily sufficient to invoke jurisdiction under 28 U.S.C.A. §§ 1331 or 1337,[25] notwithstanding the identical language appearing in those statutes. For it is well established that the grant of original jurisdiction contained in these sections of the Judicial Code falls short of exhausting the source of Congressional power to confer it under Article III of the Constitution.[26] Title IV of the LMRDA creates the right of candidacy and simultaneously vests but limited jurisdiction to grant redress for its violation. The more general provisions of 28 U.S.C.A. §§ 1331 and 1337 cannot expand the restricted scope of jurisdiction conferred by the LMRDA. Nor does resort to a prayer for declaratory relief confer jurisdiction otherwise lacking. Jurisdictional requirements were not changed by the enactment of the Declaratory Judgment Act.[27]

For the reasons appearing herein the complaint will be dismissed for want of jurisdiction over the subject matter.

Order filed in conformity with this opinion.

23. C. f. the opinion of Mr. Justice Frankfurter in DeVeau v. Braisted, 363 U.S. 144 at 157, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1959). The dissenting Justices in De Veau likewise recognize § 603(a) as a disclaimer of pre-emption, disagreeing only as to the scope of its effect. 363 U.S. 144 at 164–165, f. n. 4.

24. Section 504(b) provides: "Any person who willfully violates this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both."

25. "The tests required by Section 1337 are the same as those demanded by Section

1331 except that no jurisdictional amount need be alleged." Serio v. Liss, 300 F.2d 386, note 22, supra, at f. n. 3 of that opinion.

26. Shoshone Mining Co. v. Rutter, 177 U. S. 505, 506, 20 S.Ct. 726, 44 L.Ed. 864 (1900). See generally Mishkin, The Federal "Question" in the District Courts, 53 Columbia L.Rev. 157, 160–163, (1953) and cases cited; 1 Moore's Federal Practice ¶¶ 0.60[2] and 0.60[8.–3] (2nd Ed.).

27. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L. Ed. 1194 (1950).