484 F.2d 682
 84 L.R.R.M. (BNA) 2255, 72 Lab.Cas. P 13,947
 Joseph M. DRISCOLL, Plaintiff-Appellant,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 139,
Defendant-Appellee, and International Union of
Operating Engineers, AFL-CIO,
Intervenor-Defendant-Appellee.
 No. 72-1423.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 23, 1973.
Decided Sept. 11, 1973.
 
 Sanford J. Rosen, American Civil Liberties Union, San Francisco, Cal., James A. Walrath, Milwaukee, Wis., for plaintiff-appellant.
 Gerry M. Miller, Milwaukee, Wis., J. Albert Woll, Laurence Gold, Washington, D. C., for defendant-appellee.
 Before SWYGERT, Chief Judge, and CASTLE and BARNES*, Senior Circuit Judges.
 CASTLE, Senior Circuit Judge.
 
 
 1
 Plaintiff Joseph M. Driscoll instituted this action against Local No. 139 of the International Union of Operating Engineers seeking to force the Local to discontinue requiring all candidates for union office to execute a non-Communist affidavit. Because its by-laws required that its local unions demand such an affidavit, the international union intervened. On March 23, 1972, the district court dismissed Driscoll's complaint for want of jurisdiction. Driscoll v. International Union of Operating Engineers, Local 139, 339 F.Supp. 757 (E.D.Wis. 1972).
 
 
 2
 The parties have stipulated to the facts of this case, which are succinctly reported in the district court opinion. Id. at 758-759. Briefly stated, Driscoll was denied the opportunity to run for the position of treasurer of Local 139 because he declined to execute an affidavit affirming that he was not a member of the Communist Party or any organization advocating the overthrow of the United States government.[1] After exhausting his internal union remedies he filed a complaint with the United States Department of Labor pursuant to Sec. 402 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. Sec. 482 (1970) (the "LMRDA") charging that the affidavit requirement violated Sec. 401 of the LMRDA.[2] After the Department of Labor declined to institute litigation on his behalf,[3] Driscoll filed this action in district court, alleging violations of section 101(a)(1), (2) and (5) of the LMRDA (29 U.S.C. Sec. 411(a)(1), (2) and (5)), and the Civil Rights Act of 1871 (42 U.S.C. Sec. 1983).
 
 
 3
 The district court rejected plaintiff's constitutional arguments, finding that the action of Local 139 in promulgating and enforcing the affidavit requirement did not constitute governmental action which could be regulated by constitutional protections. Id. 339 F.Supp. at 760-761. The court also found that the invocation of the LMRDA as the statutory basis for Driscoll's suit was barred by provisions of that same act making complaint to the Secretary of Labor the exclusive remedy for the denial of one's right to be a candidate for union office. Id. at 762. Accordingly, it dismissed the complaint for want of federal jurisdiction. Plaintiff appealed, and presses in this court the arguments that the district court had jurisdiction pursuant to both the LMRDA and the first and fifth amendments to the United States Constitution.
 
 
 4
 I. Jurisdiction Under the Labor-Management Reporting and
 
 
 5
 Disclosure Act of 1959.
 
 
 6
 Appellant Driscoll argues that the district court erred in concluding that it had no jurisdiction over his complaint under Sec. 102 (29 U.S.C. Sec. 412)[4] because defendants have violated Sec. 101(a)(1), (a)(2) and (a)(5). On this appeal he places his primary reliance on Sec. 101 (a)(2)[5] by arguing that defendants have infringed upon his right of free speech by denying him the right to run for union office.
 
 
 7
 Driscoll's attempt to rely upon Sec. 101 (a)(2), however, must overcome an initial hurdle posed by the ambiguity of certain language of the LMRDA and by the interpretation of this language in Calhoon v. Harvey, 379 U.S. 134, 85 S. Ct. 292, 13 L.Ed.2d 190 (1964). The ambiguity arises from the fact that two separate titles of the LMRDA arguably provide remedies to plaintiff Driscoll in this action. Title I allows a private suit pursuant to Secs. 101(a)(2) and 102 to vindicate the denial of the right of free speech, and Title IV provides for complaint to and an action brought by the Secretary of Labor to vindicate Driscoll's right of candidacy for union office under Sec. 401(e), 29 U.S.C. Sec. 481(e),[6] which, by the terms of the statute, is the exclusive means of challenging an election already conducted. 29 U.S.C. Sec. 483.
 
 
 8
 The district court held that it had no jurisdiction under Sec. 102 over a private suit to void a restriction on candidacy for union office, for, the right of candidacy being an explicit Title IV right, the provision of Title IV providing for complaint to and suit by the Secretary of Labor to protect this right was the only remedy available. In reaching this conclusion, the court relied upon Calhoon v. Harvey, supra, where the Supreme Court dismissed a Title I suit to strike down restrictions on eligibility for union office and held that jurisdiction under 29 U.S.C. Sec. 412 could not "be upheld by reliance in whole or in part on allegations which in substance charge a breach of Title IV rights." 379 U.S. at 138, 85 S.Ct. at 295.
 
 
 9
 Driscoll seeks to avoid the application of Calhoon to the facts of his particular case on the ground that his case, unlike Calhoon, involves a direct infringement upon his Title I right to freedom of speech. He notes that plaintiff Calhoon sought to attack the requirement that candidates be union members for 5 years and have accumulated 180 days of seatime in two of the past three years; here, however, Driscoll alleges that the denial of candidacy constitutes a punishment for exercising his right to free speech as guaranteed by Sec. 101(a)(2). Consequently, he argues, this court should have jurisdiction to strike down the requirement just as other courts have had jurisdiction to strike down other union sanctions upon the free speech of their officers[7] and members.[8] If such jurisdiction is not established, he submits, the holding of the district court will enable any union to avoid the direct judicial review provisions of Title I simply by veiling its repressive measures in the form of requirements for elective office.
 
 
 10
 Despite the factual differences between Calhoon and the instant case, we are still bound by the maxim of Calhoon that
 
 
 11
 . . . disputes . . . basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title.
 
 
 12
 379 U.S. at 141, 85 S.Ct. at 296. Since Driscoll's allegations "basically relate" to eligibility and charge "in substance" that he has been denied the right to run for office in his union, he is therefore stating a cause of action which can be enforced only under the provisions of Title IV calling for complaint to and suit by the Secretary of Labor as the exclusive remedy.[9] The fact that six of the members of the Calhoon court subscribed to the majority opinion in the face of the observation made by Justice Stewart in concurrence-made also by appellant here-that unions could cloak Title I violations in terms of eligibility requirements challengable only under Title IV gives further compulsion for applying Calhoon to the facts of this case.[10]
 
 
 13
 We recognize one exception to the broad mandate of Calhoon. In Schonfeld v. Penza, 477 F.2d 899 (2d Cir. 1973), plaintiff Schonfeld and fellow union members attacked a disciplinary decision of a union which removed Schonfeld from office and declared that he be ineligible to run for any other union office until June, 1973. Although the court recognized that the complaints attacked the deprivation of what appeared to be Title IV rights, it nevertheless concluded that jurisdiction existed under Sec. 102 because plaintiffs had presented the question "whether the sanctions on Schonfeld in the peculiar context of the history of union fractionalism presented here impede or infringe upon the free speech and association rights of union members protected by Sec. 101(a)(2)." Id. at 903. But the court also recognized that such a determination of whether jurisdiction existed depended upon a close analysis of the basic thrust of the complaint, and that one could not obtain jurisdiction by merely alleging the denial of Title I rights when Title IV rights were essentially involved:
 
 
 14
 The competing values between Title I rights and Title IV procedural requirements are best reconciled, in our opinion, by limiting initial federal court intervention to cases where union action abridging both Title I and Title IV can be fairly said, as a result of established union history or articulated policy, to be part of a purposeful and deliberate attempt by union officials to suppress dissent within the union.
 
 
 15
 Id. at 904. Since the complaint filed by the plaintiffs had demonstrated a purposeful program of suppressing dissent, and since the "lengthy history of intra-District warfare" proved that plaintiff had not made "mere conclusionary allegations," the court found jurisdiction under Title I. Id.
 
 
 16
 We find that the complaint of Driscoll in the instant case, although alleging the denial of Title I rights, is insufficient to invoke jurisdiction under the rationale of Schonfeld. The complaint does not allege that the candidacy requirement is part of a purposeful program of suppressing any expression of dissent by plaintiff. Nor does it appear that the eligibility requirement is a discriminatory, ad hoc device calculated to perpetuating certain individuals in office. We hold that this case is not factually distinguishable from Calhoon or similar to Schonfeld to establish jurisdiction under Title I.
 
 
 17
 Driscoll also attempts to avoid the preclusive effect of Title IV by submitting that he is seeking pre-election remedies which are enforceable under Title I, and not post-election remedies which are available only through the Secretary of Labor.[11] In support of his position he cites holdings from various cases and dicta from others[12] which purportedly support his position. We appreciate the merits of the arguments for accepting such a distinction between pre-and post-election remedies, and recognize that only a limited standard of review is applicable to post-election suits brought under Title IV by the Secretary of Labor.[13] But we are bound by Calhoon v. Harvey, supra, which itself was a pre-election case and which impliedly required that the election first be held before any Title IV remedies be made available to the plaintiffs. See also, Amalgamated Clothing Workers of American Rank and File Committee v. Amalgamated Clothing Workers, 473 F. 2d 1303, 1306-1307 (3d Cir. 1973), Kempthorne v. United Transportation Union, 457 F.2d 551, 553 (7th Cir. 1972), Schonfield v. Raftery, 459 F. Supp. 380 (S.D.N.Y.1973), Colpo v. Highway Truck Drivers and Helpers, Local 107, 201 F.Supp. 307 (D.Del. 1961); vacated as moot, 305 F.2d 362 (3d Cir.), cert. denied, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962).
 
 
 18
 Plaintiff argues finally that the policy considerations relied upon by the Supreme Court to justify its Calhoon decision[14] do not apply to this case involving sharply-defined legal free speech issues which are not within the expertise of the Secretary of Labor. We note only that Congress has mandated by its enactment of the LMRDA that the Secretary of Labor act as a clearing house for any litigation concerning union election policies and that unions be spared from defending against unnecessary litigation. Trbovich v. United Mine Workers, 404 U.S. 528, 532, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).
 
 
 19
 We conclude that Driscoll's complaint does not allege facts which would confer jurisdiction upon the district court to adjudicate his claims under Sec. 101(a)(2).
 
 
 20
 Driscoll has also alleged that the affidavit requirement is violative of his rights under Sec. 101(a)(1) of the LMRDA in that it deprives him of equal rights[15] and Sec. 101(a)(5) in that it subjects him to improper disciplinary action.[16] We find that neither claim confers jurisdiction upon the district court. In interpreting the equal rights clause of Sec. 101(a)(1) in Calhoon v. Harvey, supra, 379 U.S. at 139, 85 S.Ct. 292 the Supreme Court held that this section requires only that a qualification on candidacy be imposed equally upon all members. The affidavit requirement is such a uniform requirement. Similarly, we do not believe that Driscoll was necessarily entitled to a hearing before he was "disciplined" by the denial of the right to run for office,[17] since, as a practical matter, no hearing was needed to determine that he did not sign the affidavit. Hurwitz v. Directors Guild of America, 364 F.2d 67, 73 n.8 (2d Cir.), cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966).
 
 
 21
 Plaintiff has finally argued that the district court should have found jurisdiction pursuant to 28 U.S.C. Sec. 1337, which grants original jurisdiction over any civil action arising under any Act of Congress regulating commerce. A personal suit asserting the right to be a candidate in a union election, however, is not one "arising under any Act of Congress regulating commerce" within the meaning of Sec. 1337, since Congress established a separate basis of jurisdiction for Title IV actions, and Calhoon, supra, permits only the Secretary of Labor to bring suit pursuant to the power conferred upon him by Sec. 402. Thus, if no cause of action arises under the LMRDA, no jurisdiction lies under 28 U.S.C. Sec. 1337.[18] Colpo v. Highway Truck Drivers and Helpers, Local 107, supra, 201 F.Supp. at 314.
 
 
 22
 II. Jurisdiction Under the United States Constitution.
 
 
 23
 Driscoll's complaint also alleged that the refusal of defendant Local 138 to allow him to run for office violated his rights under the first and fifth amendments of the United States Constitution. He asserted jurisdiction for these allegations under 28 U.S.C. Sec. 1331 and 42 U. S.C. Sec. 1983.[19] To support his jurisdictional claim he alleged that the refusal to slate him "was based under color of statute, particularly, Title 29 U.S.C. Section 481(e)."[20] The district court found no jurisdiction under these sections, holding that Driscoll had failed to demonstrate that the essentially private action of the union was so clothed with governmental authority as to be considered "state" or "federal" action that is governed by the Constitution.
 
 
 24
 On appeal, Driscoll presents two general lines of analysis to support his contention that the activity of the defendants in imposing the oath requirement constituted governmental action contrary to the first and fifth amendments. Driscoll argues initially that the economic power of unions and their involvement with the government belie any suggestion that they are voluntary organizations, and mandate the imposition of constitutional restraints upon their activities. There is no dispute that unions, although traditionally regarded as private entities,[21] have been subjected to extensive governmental regulation and have been granted various powers by governmental agencies. But governmental regulation or participation in some of the affairs of unions does not consequently make every union activity so imbued with governmental action that it can be subjected to constitutional restraints. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). To be regulable under constitutional standards through Sec. 1331 or Sec. 1983, the very activity of a private entity which a plaintiff challenges must be supported by state action, Doe v. Bellin Memorial Hospital, 479 F.2d 756, 761 (7th Cir. 1973), Powe v. Miles, 407 F.2d 73, 81 (2d Cir. 1968), that significantly fosters or encourages that activity. Moose Lodge No. 107 v. Irvis, supra, 407 U.S. at 173, 92 S.Ct. 1965; Lucas v. Wisconsin Electric Power Co., 466 F.2d 638, 656 (7th Cir.) (en banc), cert. denied, 409 U.S. 1114, 93 S. Ct. 928, 34 L.Ed.2d 696 (1973), Todd v. Joint Apprenticeship Comm., 223 F. Supp. 12, 20 (N.D.Ill.1963). For Driscoll to prevail in this jurisdictional claim, he must demonstrate that the governmental activity significantly encouraged defendants in their promulgation and enforcement of the anti-Communist oath. Only then will there be "governmental action" to bring the operation of the first and fifth amendments into play.
 
 
 25
 Plaintiff's second line of analysis suggests two particular ways in which the federal government is involved in the activity of the defendants. First, he notes that defendants relied upon Sec. 401(e) of the LMRDA (29 U.S. C. Sec. 481(e)) as a justification for their imposition of the affidavit requirement, for they argued that it was a reasonable qualification for candidacy within the meaning of that statute. Secondly, he argues that the failure of the Secretary of Labor to institute Title IV proceedings on his original complaint amounts to an official participation in the unconstitutional acts of the defendants. Neither ground shows significant federal encouragement of the affidavit requirement to trigger constitutional protections. It is apparent that before the enactment of Sec. 401, unions had the power to exclude whomever they wished from membership or candidacy for union office (subject to some restrictions regarding discrimination on account of race, color, creed, and sex). See, e. g., International Association of Machinists v. Friedman, 102 U. S.App.D.C. 282, 252 F.2d 846 (1958), Callahan v. Order of Railway Conductors, 169 Wis. 43, 171 N.W. 653 (1919); but see Hurwitz v. Directors' Guild of America, Inc., supra, Crossen v. Duffy, 90 Ohio App. 252, 103 N.E.2d 769 (1951). The enactment of Sec. 401(e) has neither enhanced the union's power over candidacy qualifications nor diminished plaintiff's rights, Lucas v. Wisconsin Electric Power Co., supra, 466 F.2d at 647; nor does the failure of Congress to go further in outlawing all restrictions upon candidacy transform defendants' conduct into governmental action. We also refuse to find that the decision of the Secretary of Labor not to act under the limited powers given to him under Title IV[22] established governmental action. As Mr. Justice Rehnquist recognized in Moose Lodge No. 107 v. Irvis, supra, 407 U.S. at 175-176 n.3, 92 S.Ct. 1965, a regulatory agency must affirmatively approve or endorse the activity of a private entity for such activity to become subject to the constitution. Such is not the case here.[23] We conclude that the district court correctly concluded that defendants are not engaged in governmental action to invoke the operation of either 28 U.S.C. Sec. 1331[24] or 42 U.S.C. Sec. 1983.
 
 
 26
 Our finding that the district court correctly dismissed this case for want of jurisdiction renders it unnecessary to pass upon the arguments relating to whether a body engaging in governmental action or acting under color of federal law could impose the oath involved in this case. The judgment of the district court is affirmed.
 
 
 27
 Affirmed.
 
 
 
 *
 The Honorable Stanley N. Barnes, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation
 
 
 [1]
 The affidavit which Driscoll originally refused to sign contained the following language:
 I swear that I am not at the present time or have ever been [sic] a member of the Communist Party or any other subversive organization dedicated to or advocating the overthrow of the Government of the United States.
 The oath was subsequently revised to the following form:
 I swear that I am not a member of the Communist Party or other organization that advocates the overthrow of the United States Government by force or violence, knowing of and sharing in such advocacy and acting pursuant to the teaching that the United States Government should be overthrown by such means.
 Driscoll refused to sign this version of the oath also.
 
 
 [2]
 Sec. 401 of the Act, 29 U.S.C. Sec. 481, states in pertinent part:
 (e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed). . . .
 United States v. Brown, 381 U.S. 437, 85 S. Ct. 1707, 14 L.Ed.2d 484 (1965), struck down the provisions of Sec. 504 making it a crime for a member of the Communist Party to serve as an officer or employee of a labor union because they constituted a "bill of attainder" outlawed by article I, Sec. 9 of the United States Constitution.
 
 
 [3]
 The Department of Labor notified Driscoll that it had decided to close his case because "it had been determined that this case is not suitable for litigation under Section 402 of the Act." No further explanation was given
 
 
 [4]
 Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located
 
 
 [5]
 Freedom of speech and assembly.-Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business property before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations
 
 
 [6]
 See note 2, supra
 
 
 [7]
 Grand Lodge of the International Association of Machinists v. King, 335 F.2d 340 (9th Cir.), cert. denied, 379 U.S. 920, 85 S. Ct. 274, 13 L.Ed.2d 334 (1964), Salzhandler v. Caputo, 316 F.2d 445 (2d Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963)
 
 
 [8]
 See, e. g., International Brotherhood of Boilermakers v. Rafferty, 348 F.2d 307 (9th Cir. 1965), Farowitz v. Associated Musicians of Greater New York, Local 802, 330 F.2d 999 (2d Cir. 1964)
 
 
 [9]
 On appeal, defendants have apparently abandoned the argument that the district court had no jurisdiction over Driscoll's LMRDA allegations, and have contended instead that, although jurisdiction exists, the complaint does not state a cause of action. Defendants have reasoned that Sec. 101(a)(2) permits a union to impose "reasonable rules as to the responsibility of every member toward the organization as an institution," and that the imposition of the affidavit requirement was such a reasonable rule. To support this theory, they point out that because Congress passed Sec. 502 of the LMRDA (which prohibited Communists from taking union office) at the same time as Sec. 101, it must have determined that any union rule imposing an anti-Communist affidavit requirement was reasonable
 We do not read Calhoon as admitting jurisdiction over plaintiff's complaint so as to make it necessary to reach defendant's argument and the problems it raises. See note 23, infra. Calhoon involved both the failure to state a claim and the lack of jurisdiction. The allegations of the complaint asserting a violation of Sec. 101(a)(1) were not sufficient to state a claim. Upon closer analysis, the complaint also alleged in substance that the restrictions on candidacy for union office were unreasonable; the Court held that such a claim was not within the jurisdiction of the district court because it fell within Title IV. Thus, Calhoon requires analysis of the substance (379 U.S. at 138, 85 S.Ct. 292) and basic nature (Id. at 141, 85 S.Ct. 292) of the complaint in order to determine whether jurisdiction exists. Such an approach was employed in Schonfeld v. Penza, 477 F.2d 899 (2d Cir. 1973), discussed infra.
 
 
 [10]
 The legislative history of the LMRDA indicates Congress' recognition that the right of candidacy would be enforced in a manner separate from the right to freedom of speech. When Senator Kuchel introduced his amended version of the bill of rights, which constitutes much of the present Title I of the LMRDA, the question arose as to whether the enumeration of rights in his bill would exclude other rights not explicitly listed therein. In response, Senator Cooper noted that the right of candidacy was guaranteed in another section of the bill which had already been proposed:
 The bill itself, in section 301 [the precursor to Sec. 401 of the final version] . . . guarantees to every member of a union the right to be a candidate. I think that answers the question.
 I think it important to state for the legislative history that the enumeration of the rights mentioned does not exclude other rights. It is so provided in another section of the amendment.
 
 
 [106]
 Cong.Rec. 6720 (1959). Senator Kennedy then read the text of the present version of Sec. 401(e), and, without mentioning the different procedure for the enforcement of the right of candidacy guaranteed by it emphasized that such a right was additional to those granted in the bill of rights. Id
 
 
 [11]
 Plaintiff's complaint did not state when the election was to be held, but the parties stipulated to the fact that it was held from July 13 to August 16, 1968. Since the by-laws of defendant Local 139 require the election of officers every 3 years, it is assumed that the next election will be held in summer, 1974. If plaintiff had alleged that the election had been already held or if he had prayed for relief regarding a specific election, Sec. 403 would apparently require dismissal of his complaint because the exclusive post-election remedy is through the Secretary. The ease with which one can avoid Sec. 403 by omitting such allegations or prayers emphasizes the wisdom of the district court's holding that the absence of such pleadings does not confer jurisdiction
 
 
 [12]
 Pre-election suits which have successfully asserted jurisdiction have usually involved arbitrary discrimination against individuals or groups of members, DePew v. Edmiston, 386 F.2d 710 (3d Cir. 1967), Beckman v. Local 46, International Ass'n of Bridge Workers, 314 F.2d 848 (7th Cir. 1963), Schonfeld v. Raftery, 335 F.Supp. 846 (S. D.N.Y.1971), or statutes expressly authorizing the filing of a particular kind of suit, Yablonski v. United Mine Workers, 305 F. Supp. 868 (D.D.C.1969)
 In Trbovich v. United Mine Workers, 404 U.S. 528, 531, 92 S.Ct. 630, 633, 30 L.Ed.2d 686 (1972), the Court noted that "[w]ith respect to elections not yet conducted, the statute provides that existing rights and remedies apart from the statute are not affected." This dicta apparently recognizes that the only pre-election remedies to protect rights enumerated in Title IV are those existing outside the LMRDA.
 
 
 [13]
 Section 402 of the act, 29 U.S.C. Sec. 482, provides that the Secretary shall bring a civil action to set aside an election which he finds probable cause to believe was tainted by a violation of Title IV. The court, however, can void an election only if it finds that a violation of Sec. 401 has occurred and that the violation "may have affected the outcome of the election."
 
 
 [14]
 Calhoon v. Harvey, supra, 379 U.S. at 140, 85 S.Ct. 292
 
 
 [15]
 Equal rights.-Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws
 Driscoll's complaint did not allege in which way the affidavit requirement deprived him of his equal right to nominate, vote, attend meetings, and participate in the business of union meetings under Sec. 101(a)(1).
 
 
 [16]
 Safeguards against improper disciplinary action.-No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing
 
 
 [17]
 Schonfeld v. Penza, 477 F.2d 899, 904 (2d Cir. 1973), Martire v. Laborers' Local 1058, 410 F.2d 32, 35-36 (3d Cir.), cert. denied, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969)
 
 
 [18]
 For the contrary viewpoint see Serio v. Liss, 300 F.2d 386 (3d Cir. 1961), Postma v. International Brotherhood of Teamsters Local 294, 229 F.Supp. 655 (N.D.N.Y.1964), McKeon v. Highway Truck Drivers and Helpers Local 107, 223 F.Supp. 341 (D. Del.1963). We find that these cases are distinguishable for various reasons, and respectfully decline to follow them to the extent to which they are inconsistent with this opinion
 
 
 [19]
 28 U.S.C. Sec. 1331 provides in pertinent part:
 (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.
 42 U.S.C. Sec. 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [20]
 Plaintiff's complaint alleged no facts showing "state action" to support invocation of Sec. 1983; nor does he argue any such facts on appeal. The question, then, is whether the action of the defendants is subject to constitutional restraints under 28 U. S.C. Sec. 1331. The parties have argued this issue with the implicit assumption that the same quantum of involvement with the federal government would confer jurisdiction under Sec. 1331 as would state or local government intervention under Sec. 1983, even though the wording of the two statutes is different
 
 
 [21]
 Labor unions have been traditionally regraded as private entities, despite the imposition of regulatory provisions upon them. American Communications Ass'n v. Douds, 339 U.S. 382, 402, 70 S.Ct. 674, 94 L.Ed. 925 (1950), Oliphant v. Brotherhood of Locomotive Trainmen and Enginemen, 262 F. 2d 359, 363 (6th Cir. 1958), cert. denied, 359 U.S. 935, 79 S.Ct. 796, 3 L.Ed.2d 769 (1959). The same view was expressed during the debates preceding enactment of the LMRDA
 
 
 [22]
 See note 13, supra. The decision of the Secretary of Labor to close Driscoll's case was undoubtedly influenced by his judgment as to his ability to prove either that the affidavit requirement was an unreasonable restriction on candidacy under Sec. 401(e) of the LMRDA or that it may have affected the outcome of the election
 
 
 [23]
 A different issue would be presented had the defendants imposed the affidavit requirement in response to the requirements of Sec. 9(h) of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 159(h) (repealed in 1959) and continued it thereafter. The record does not indicate that this was the case
 Because of our holding concerning lack of jurisdiction under the LMRDA in section I of this opinion, we do not reach the question of whether recognition of an anti-Communist oath as a reasonable restriction upon freedom of speech within the meaning of Sec. 101(a)(2) would constitute governmental action. This question would arise in two forms. The first would be whether reliance upon congressional intent found in legislative history would be any different from reliance upon an explicit congressional statute for the purposes of finding government action. The second would be whether judicial declaration of the reasonableness of the affidavit requirement would constitute state action; for the legislative history of Sec. 101(a)(2) indicates that the courts have the onus of defining and restricting rights under Title I:
 Mr. Curtis. Is it true that under the Senator's (Mr. Kuchel's) amendment there are some rights which are not granted equally to all members of the union?
 Mr. Kuchel. That would be true only if one of the courts of the United States, which was called upon to sit in judgment as to whether the rights were violated, determined that it was reasonable on the part of a specific labor organization to make such an excision.
 
 
 [105]
 Cong.Rec. 6719 (1959). See also Semancik v. United Mine Workers of America District #5, 466 F.2d 144, 155-156, 156 n. 11 (3d Cir. 1972)
 
 
 [24]
 Because of our holding, we do not reach the question of whether Driscoll had to or did meet the $10,000 jurisdictional requirement imposed by 28 U.S.C. Sec. 1337