**John J. O'BRIEN, Plaintiff,**

v.

**Robert PADDOCK as President of the United Scenic Artists Local Union 829 of the Brotherhood of Painters, Decorators and Paperhangers of America, Defendant.**

United States District Court
S. D. New York.
Sept. 22, 1965.

John Tresnowske, New York City, for plaintiff.

Erwin Feldman, New York City, for defendant.

COOPER, District Judge.

This is a motion to dismiss a complaint under Rules 12(b) (1) and (6) of the F.R.Civ.P. for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted.

The complaint is filed pursuant to the provisions of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA),[1] and alleges that the defendant labor organization, movant herein, has denied certain union members in good standing " * * * the right to nominate candidates, to vote in local elections and referendums * * * to vote upon * * * by-laws, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings" (Complaint, p. 2), in violation of Title I, § 101(a) (1), 29 U.S.C. § 411(a) (1). The jurisdiction of the Court is conferred by § 102 of Title I of the Act.[2]

Movant contends that the issues presented in this proceeding are in all respects identical to those found in Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (Decided December, 1964), and that the holding in that case requires us to dismiss the complaint. (Movant's Brief, p. 2). We think that movant's reliance on Calhoon v. Harvey, supra, is unfounded in view of the dissimilarity of the issues there litigated and here presented.

In enacting the LMRDA, Congress sought "to insure union democracy" by affording protection of union members' rights to participate in the election process. S.Rep.No.187, 86th Cong., 1st Sess. 2, 20 (1959) ; H.R.Rep.No.741, 86th Cong., 1st Sess. 15 (1959), U.S.Code Congressional and Administrative News, p. 2318.

Under Title IV, subject to uniform qualifications, union members in good standing are secured the right to vote, to nominate candidates and to run for and hold office. §§ 401–403. The Act further prescribes the frequency within which elections are to be conducted; provides for accessibility of membership lists; requires distribution of campaign literatures and prohibits the use of union funds in promoting individual candidacies. § 401(a), (b), (c), (g).

Under Title I, union members receive a general guarantee to "equal rights and privileges within * * * [the union] to nominate candidates, [and] to vote in elections * * * *" § 101(a) (1).

Complainants in Calhoon alleged a denial of their right to "nominate candidates" under § 101(a) (1) of Title I, a provision referred to as a "Bill of Rights" for union members.[3] The juris-

1. 73 Stat. 519, 29 U.S.C. § 401 et seq. (1958 ed., Supp. V).

2. "Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal officer of such labor organization is located."

3. "Equal Rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to

diction of the district court, predicated on a Title I violation, was authorized by § 102 of that title. The Supreme Court, however, found that the gravamen of their claim went to the reasonableness of eligibility requirements for nominees, an area governed by Title IV which creates rights and procedures respecting nomination and election of union officials. A Title IV violation can be remedied only by the Secretary of Labor in whom resides the power to institute a civil action in the district court after an allegedly invalid election has taken place.[4] §§ 402–403.

The argument that the eligibility requirements might have been so onerous as to make the right to nominate (which right is secured by Title I) an empty one was unpersuasive to the Court. Said Mr. Justice Black:

> The result of their allegations here, however, is an attempt to sweep into the ambit of their right to sue in federal court if they are denied an *equal opportunity to nominate candidates* under § 101(a) (1), a right to sue if they are not allowed to nominate anyone they choose regardless of his eligibility and qualifications under union restrictions. But Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials and provides its own separate and different administrative and judicial procedure for challenging those standards. And the *equal-rights* language of § 101(a) (1) would have to be stretched far beyond its normal meaning to hold that it guarantees members not just a right to 'nominate candidates,' but a right to nominate anyone, without regard to valid union rules. 379 U.S. at 138, 85 S. Ct. at 295. (Emphasis supplied.)

Thus, viewing the Calhoon complaint as in substance directed to a Title IV violation, the district court was held to be without jurisdiction to hear the case, vindication of Title IV rights having its exclusive remedial route through the Secretary of Labor.

■ Movant's contention here impliedly views the instant complaint, under the Calhoon holding, as alleging Title IV violations. But the situation in Calhoon is in sharp contrast to the allegations before us. Plaintiff here avers that certain members in good standing who are designated as "Associate" members are being denied their rights under Title I: an *equal opportunity* to nominate, to vote, to participate in meetings, and to pass on by-laws.

Unlike Calhoon, there is no concern here over the reasonableness of eligibility requirements. The essence of the claimed wrong in this case is unequal treatment of nominators, not plaintiff's

---

participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and by-laws."

In adding Title I to the bill during Senate debate, apparently no effort was made to reconcile its election provisions with others already contained in Title IV. 105 Cong.Rec. 6469–93, 6720 (1959). On legislative history, see Sherman, The Individual Member and the Union: The Bill of Rights Title in the Labor-Management Reporting and Disclosure Act of 1959, 54 Nw.U.L.Rev. 803 (1960). The nature and scope of substantive rights granted under Titles I and IV is treated in Smith, The Labor-Management Reporting and Disclosure Act of 1959, 46 Va.L.Rev. 195, 224 (1960); see also, Daniels, Union Elec-

tions and The Landrum-Griffin Act, 13th Ann.N.Y.U.Conf. on Labor 317, 327–30 (1960).

4. It would appear that the Secretary may not institute pre-election suits, and two courts have so concluded. § 402; Jackson v. National Marine Eng. Ben. Ass'n, S.D.N.Y., 1963, 221 F.Supp. 347; Johnson v. San Diego Waiters & Bartenders Union, S.D.Cal., 1961, 190 F.Supp. 444. Post-election suits under Title IV brought by union members to set aside an election have likewise been dismissed for lack of jurisdiction. Coleman v. Brotherhood of Railway & Steamship Clerks, S.D.N.Y., 1964, 228 F.Supp. 276; Mamula v. United Steelworkers of America, 3d Cir., 1962, 304 F.2d 108; Gammon v. International Ass'n of Machinists, N.D.Ga., 1961, 199 F.Supp. 433.

right to be nominated. Cf. Johnson v. San Diego Waiters & Bartenders Union, S.D.Cal., 1961, 190 F.Supp. 444, 447.

Further, the Calhoon litigation was directly concerned with denial of the right to nominate, not with denial of the right to vote also claimed here. What reference the Supreme Court makes to the right to vote is contrary to movant's position: § 101(a) (1) "is * * * a command that members and classes of members shall not be discriminated against in their right to nominate and vote." 379 U.S. at 139, 85 S.Ct. at 295. See Gurton v. Arons, 2d Cir., 1961, 339 F.2d 371, 377.

Moreover, Title I's Bill of Rights forbids discrimination not only in the right to nominate and vote, but also in the right to membership participation at meetings—a subject not touched on in the Calhoon litigation. This right falls clearly within the confines of Title I as the complaint alleges. Acceptance of movant's unarticulated assumption that Calhoon construed Title IV to comprehend denial of membership participation rights would deprive § 101(a) (1) of Title I of any force and effect.

Accordingly, this Court has jurisdiction over the subject matter under § 102 of the LMRDA.[5]

As to movant's other contention that the complaint fails to state a claim upon which relief can be granted, suffice it to say the gist of the allegations here, deemed to be true on a motion to dismiss and liberally construed, is clearly within the ambit of Title I which creates the cause of action.

It might be noted that one phase of plaintiff's prayer for relief seeks to set aside elections in which "Associate" members were denied their equal right to vote. Although the parties have not raised the issue, it is arguable that § 403 of Title IV which provides, *inter alia*, "[t]he remedy provided by this title for challenging an election already conducted is exclusive,"[6] forecloses such relief. Whether post-election relief can be predicated on a Title I breach is a question to which an authoritative answer has not yet been given. However, even if this question is answered in the negative, it is clear that the allegations in the complaint, if true, afford other possibilities to relief as prayed for. A complaint is not subject to dismissal unless plaintiff cannot prevail under any state of facts which might be proven in support thereof.

The motion is denied.

This shall be considered an order; settlement thereof is unnecessary.

So ordered.

---

5. See note 2, supra.

6. This refers to Title IV and the necessity for the Secretary of Labor to bring a court action. See note 4, supra.