Lindsay C. DEPEW, William G. Osborne and Dominick Caldarelli, Appellants,

v.

Spurgeon E. EDMISTON, as President, Chester A. Roller, as Secretary, and Purdy E. Garman, as Treasurer, of Keystone Lodge No. 42, Brotherhood of Railroad Trainmen, and Keystone Lodge No. 42, Brotherhood of Railroad Trainmen, Appellees.

No. 16491.

United States Court of Appeals Third Circuit.

Argued Oct. 6, 1967.

Decided Nov. 27, 1967.

6. Jones v. C. I. R., 6 Cir., 357 F.2d 644, 645; McGowan v. C. I. R., 7 Cir., 347 F.2d 728, 729.

G. Thomas Miller, McNees, Wallace & Nurick, Harrisburg, Pa. (Joseph A. Klein, Harrisburg, Pa., on the brief), for appellants.

Cornelius C. O'Brien, Jr., O'Brien, Anderson, McCrudden & Parrish, Philadelphia, Pa. (Matthew J. Ryan, III, Philadelphia, Pa., on the brief), for appellees.

Before STALEY, Chief Judge, and MARIS and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

 Appellants, relying on § 101(a) (1) of the Labor-Management Reporting and Disclosure Act of 1959 [73 Stat. 522, 29 U.S.C. § 411(a) (1)] [1] asked for in-

---

1. 29 U.S.C. § 411(a) (1):

"Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, * * * subject to reasonable rules and regulations in such organization's constitution and bylaws."

The courts have jurisdiction to redress infringement of §§ 101(a) (1) and (5) under § 102 of the LMRDA (29 U.S.C. § 412). Appellant Caldarelli also alleged violation of § 101(a) (5), 29 U.S.C. § 411 (a) (5), claiming illegal disciplinary action had been taken against him in compelling him to transfer lodge membership without a hearing. Since he was still a

junctive relief to restrain the conduct of a scheduled union election by Keystone Lodge No. 42, Brotherhood of Railroad Trainmen, unless and until they had been accorded an equal opportunity to nominate and vote for candidates in the election. The District Court dismissed the appellants' claim that they had been denied an equal right to nominate and vote for lack of jurisdiction over the subject matter on the authority of Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), and this appeal followed.

Appellant Caldarelli was nominated for the office of Treasurer-Collector of Lodge No. 42 and also for election as Vice-Chairman of the Grievance Committee, Philadelphia Division of the Lodge. He and the other appellants were among those who signed his nomination petitions. In response to an objection raised by another member, the President of the Grand Lodge sent a letter on October 25, 1966, (approximately a month before the scheduled elections) stating:

"I wish to further advise that inasmuch as Brother Caldarelli is restricted to yard work and has been working in the Enola Yards for the last several years, which yards are under the exclusive jurisdiction of Lodge 694, he would not be eligible to be a candidate in the election for vice chairman, treasurer or any other office in Lodge 42, and furthermore, he would be required

to hold membership in Lodge 694, which Lodge has jurisdiction over his employment and such transfer should be immediately effected, inasmuch as Lodge 694 is rightfully entitled to his membership."

Consequently, appellant Caldarelli's name was removed from the ballots mailed to all members November 7, 1966, one of which ballots was mailed to him for his vote.

In dismissing the complaint, the judge below characterized the appellants' contention as one concerning solely eligibility restrictions of candidates for union office.[2] Calhoon v. Harvey, supra, makes clear, however, that the crucial question for the court is whether or not a union member has been discriminated against in one of the rights enumerated in § 101 (a) (1).[3] If such discrimination is present, a cause of action exists under § 101 (a) (1) regardless of other claims; absent such discrimination, the courts have no such jurisdiction. This case is outside the mandate of Calhoon v. Harvey, since the factual context shows that discrimination in the nominating and voting rights of membership lies at the core of this controversy. Unlike Calhoon v. Harvey, no attempt is made to show that application of an existing union eligibility requirement leads to a § 101(a) (1) violation. Rather, here a distinction made among "members" allegedly infringed their § 101(a) rights to nominate and

member in full at the time of the trial, as conceded by the appellees, and no actions of any type had been commenced against him, it is unnecessary for us to discuss this contention.

2. The memorandum opinion added that Calhoon v. Harvey could not be avoided merely by having other than the person declared an ineligible candidate sue as plaintiffs and allege they were deprived of their right to vote and nominate discriminatorily, since the gravamen of the complaint remained officership eligibility requirements, not § 101(a) (1) rights. See Memorandum Decision and Order Granting the Defendants' Motion to Dismiss for Lack of Jurisdiction, C.A. No. 8903, January 6, 1966.

3. 379 U.S. at 139, 85 S.Ct. at 295:
"The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others. * * * It is true that they were denied their request to be candidates, but that denial was not a discrimination against their right to nominate, since the same qualifications were required equally of all members. Whether the eligibility requirement set by the union's constitution and bylaws were reasonable and valid is a question separate and distinct from whether the right to nominate on an equal basis given by § 101(a) (1) was violated."

vote equally. See O'Brien v. Paddock, 246 F.Supp. 809 (S.D.N.Y.1965); cf. Gurton v. Arons, 339 F.2d 371, 374 (2d Cir. 1964). That the alleged discrimination ultimately had consequences for the eligibility of a candidate for office may be inherent in showing unequal treatment in the rights to vote and nominate, but the eligibility determination is not the crux of this complaint.

As the union constitution provided in § 133, "[t]he membership of a subordinate lodge * * * [was] confined to the jurisdiction assigned it by the President." [4] Lodge No. 42 was a "road" lodge for freight trainmen employed on Pennsylvania Railroad road territory between Philadelphia and Altoona, Pa. Lodge No. 694 was a "yard" lodge with jurisdiction over trainmen working in the Enola, Pennsylvania, yards. Presumaby, as the President's letter points out, if a man went from "road" to "yard" work, he would have to transfer his membership to another lodge.

But the testimony at the hearing below showed that such was not the practice and that many men doing "yard" work at the Enola Yard were still members of Lodge No. 42. The explanation of this situation appears twofold. Testimony revealed that a certain group of employees called "Group 10" had dual seniority on or eligibility for both "road" and "yard" work. Although such men might have performed primarily yard work, as long as they were free to bid for road work, they could remain in a "road" lodge like No. 42. This was true, apparently, even if it was highly unlikely that a man would have sufficient seniority to "hold" a road job when extras were needed. Furthermore, men in such a dual position could make the opposite election and be members of a "yard" lodge like No. 694 even if they worked on the "road." The section of the Brotherhood Constitution that governed Lodge membership apparently provided for this situation by the proviso "that members who do not leave the jurisdiction of the local grievance committee of the lodge * * * shall not be compelled to transfer." Secondly, a "Ruling" of the Brotherhood on this section suggests that even if a member did not fall within this proviso, past practice in requiring transfer had been lax.[5]

These membership requirements are crucial to this case because only "members" are allowed to be elected as Lodge officers.[6] Appellant Caldarelli ran for

---

4. "Membership in the Subordinate Lodge.
 "Sec. 133. The membership of a subordinate lodge shall be confined to the *jurisdiction assigned it by the President.* Any member employed in train, yard or bus service on any railroad or bus line, shall, within thirty days thereof, notify the secretary of the lodge having jurisdiction. He shall also, within 60 days, transfer his membership to the lodge having jurisdiction where he is employed; provided, however, that members who do not leave the jurisdiction of the local grievance committee of the lodge * * * shall not be compelled to transfer."

5. Ruling on Section 133:
 "Section 133 makes it compulsory that members accepting employment under the jurisdiction of a lodge other than that in which membership is held, must transfer to the lodge having jurisdiction, within 90 days. It is held under this section that 90 days covers the period in which actual transfer of membership shall take place. It is not sufficient that

a transfer card be granted within this time, but the transfer must be completed.
 "Lodges and members should more carefully observe the requirements of these sections, and cause members to transfer to lodges under whose jurisdiction they are employed. If a lodge has knowledge that one of its members is working under the jurisdiction of another lodge, it is the duty of the treasurer to notify him that he must transfer his membership, and issue transfer card. When a lodge receives a request for a transfer card, either from one of its members or from another ·lodge under whose jurisdiction such member is employed, the request should be given prompt attention."

6. "Elections in Subordinate Lodges.
 "Sec. 85(a). * * * Any member, to be elected an officer, must have attended at least two lodge meetings in each of the two years preceding the year of election, and three meetings in the year of election."

the same Lodge office of Treasurer-Collector in 1963 and, although nominated, lost the election. Moreover, in 1962 he ran for vice chairman of the Local No. 42 grievance committee and was elected. Both nominations and his subsequent service went unchallenged. All this followed his heart attack in 1961 and his "temporary restriction" to "yard" duty at that time. Testimony on the record reveals that this physical restriction is apparently still temporary and that contemplated changes in railroad communication may well increase the chances that this restriction will be lifted in the future. Nonetheless, of all those having "dual seniority" and thus remaining members of Lodge No. 42 since under the jurisdiction of their grievance committee while working in the Enola yards, appellant Caldarelli was the only one with a physical restriction as opposed to a "restriction" from "road" work resulting from insufficient seniority.

▆ Nothing in the testimony or exhibits, or in the Brotherhood's Constitution, § 85(a), seems to provide for a distinction among "members" eligible to be nominated for Lodge office. Appellant Caldarelli is either a full member under § 85 for purposes of Lodge officer elections or he is not one at all. Appellees seem to concede that he is a member at least for purposes of voting.[7] On the face of the pleadings and record, therefore, appellants made out a case of discriminatory treatment of Caldarelli sufficient to justify a finding that he had been placed in a class of membership lacking equal opportunity to nominate and vote.[8] Such a contention gives the court jurisdiction under §§ 101(a)(1) and 102.

The requirements for grievance committee elections differ significantly from those for Lodge election by adding further conditions: only "members who are employed in services represented by the Brotherhood" are allowed to be elected as members of grievance committees and, furthermore, in order to vote for members of certain grievance committees, voting members must be "actually employed on regular or spare positions in the craft represented. * * *"[9] General Rule

---

7. Whether Caldarelli could qualify for new membership in Lodge No. 42 is not at issue. See § 110 of the Brotherhood's Constitution. At stake is whether or not Caldarelli should transfer his membership to Lodge No. 694, pursuant to §§ 133 and 79, and whether or not before such transfer had actually taken place, he could be prevented from nominating or voting for himself because practice under the constitution uniformly recognized a sub-class of "members" with decreased nominating and voting rights: those liable for transfer. Sections 79 and 133 of the constitution, plus the testimony of record, do not give any clear picture of the internal procedure of the Brotherhood. Whether grievance committee "jurisdiction" differs from or governs Lodge "membership" or Lodge "jurisdiction" cannot be determined. Equally unclear is past practice concerning people in employment situations similar to appellant Caldarelli's.

8. The finding that "[t]here is no indication that the same qualifications were not required equally of all candidates" does not preclude the alleged discrimination in the right to nominate and vote which resulted from the sudden change in Caldarelli's membership status. We do not, thus,

need to decide here if the treatment of Caldarelli's membership alone violated the other appellants' rights to nominate and vote; see Note, Union Elections Under the LMRDA, 74 Yale L.J. 1282, 1295, n. 82 (1965). The formality of joining additional plaintiffs does not constitute a device to evade the Supreme Court's holding in Calhoon v. Harvey, supra, on this record.

It is noted that the present record reveals no evidence that Caldarelli had a dual seniority which was different from many other members not asked to transfer, including the incumbent Lodge President. Moreover, there is no showing how temporary physical restrictions affected such dual seniority. We recognize that it is the trial judge's function to make findings on such matters, if appropriate, on the entire record as it may be before him.

9. "Elections in Subordinate Lodges.
 "Sec. 85(a). * * *
 * * * * *
 ". . . Only members who are employed in services represented by the Brotherhood shall vote for or be elected as members of local grievance committees. Where separate local grievance committees, to accommodate

No. 1 for local grievance committees adds the requirement that the vice chairman is "to be elected from among and by the members in actual service on the division or system which the committee is to represent." [10]

In light of the above testimony and these provisions of the Brotherhood's Constitution, the present record does not permit the conclusion as a matter of law that the appellants have been deprived of their rights to vote and nominate equally for vice-chairman of the local grievance committee. The special category that appellees claim appellant Caldarelli falls into with his physical restriction appears consonant with "reasonable rules and regulations" of the Brotherhood, particularly in view of the distinctions in membership made for purposes of grievance committee elections and offices such as "actual service on the division" represented and actual employment "on regular or spare positions in the craft represented." [11] Appellants failed to show that these membership distinctions were not applied uniformly in practice and that a distinction based on man's physical restrictions was ignored in past similar situations.[12]

For the foregoing reasons, the order of the District Court dismissing this suit will be reversed and the case will be remanded for findings on whether or not appellant Caldarelli was discriminated against when placed in a class of members who could neither nominate nor vote for themselves, and who could not be nominated by or voted for by other members of Lodge No. 42, as far as Lodge officers are concerned. The District Court does have jurisdiction to determine this contention of appellants under § 101(a) (1) in view of the record in this case.

---

special occupations groups, have been authorized by the Grand Lodge, only those members actually employed on regular or spare positions in the craft represented, shall vote for such committees."

10. Local Grievance Committee Rule:
"No. 1(a). All subordinate lodges shall elect local grievance committees for each division or system represented in the lodge by five or more members. The committee shall consist of a chairman, who has attended at least three meetings each year during the three years preceding the year of election, and three meetings in the year in which the election is held; a vice chairman and secretary, to be elected from among and by the members in actual service on the division or system which the committee is to represent."

11. In light of the peculiar wording of § 85(a) of the Brotherhood Constitution, supra, note 9, the Lodge might well have denied Caldarelli the right to vote as well as nominate himself and not violated § 101(a) (1), since it may well be reasonable to differentiate among some types of members within Lodge No. 42 for purposes of grievance committee elections, and the constitution would appear to do it uniformly. But we do not need to decide this issue here nor speculate on discrimination that might exist in the actual practice under the constitution as to grievance committee officers.

12. That Caldarelli served as committee vice-chairman from 1962 to 1966 without objection does not estop the appellees nor sustain the appellants' burden of proving discrimination. It appears simply that no one called Caldarelli's situation to the attention of the Grand Lodge until October 1966.