**Walter H. KUPAU, Gordon Yanagawa, and Robert Oyadomari, Plaintiffs,**

v.

**Masayuki YAMAMOTO, Stanley Ito, William Sidell, United Brotherhood of Carpenters and Joiners of America, Local 745, AFL–CIO, United Brotherhood of Carpenters and Joiners of America, and John Doe 1 through John Doe 10.**

Civ. No. 78–0269.

United States District Court,
D. Hawaii.

Aug. 16, 1978.

Herbert Takahashi, Edward H. Nakamura, Honolulu, Hawaii, for plaintiffs.

Alvin T. Shim, Benjamin C. Sigal, Honolulu, Hawaii, for defendants.

## ORDER GRANTING MOTION FOR PRE-LIMINARY INJUNCTION AND DE-NYING MOTION TO DISMISS

WONG, District Judge.

Plaintiffs Yanagawa and Oyadomari nominated plaintiff Kupau to stand for election for the position of Financial Secretary-Business Representative of Local No. 745, United Brotherhood of Carpenters and Joiners of America. On June 23, 1978, Kupau was elected to that position. Defendants, however, have refused to install Kupau in office. Plaintiffs filed a complaint with this court together with a motion for preliminary injunction seeking, *inter alia,* the installation of Kupau to the office to which he was elected.

Prior to the election, an election committee was appointed by the president of Local 745. The election committee ultimately determined Kupau to be eligible to stand for election. After the election, the losing candidate, defendant Ito, filed a protest with General President Sidell. On July 21, 1978, Sidell rendered his decision in which he determined that Kupau was not an eligible candidate because "he [was] not working at or depending upon the trade for a livelihood within the meaning of Section 31E [of the Constitution and Laws of the parent organization.]" The decision further declared:

The action of the Local Union election committee in finding to the contrary is overruled. (It should be noted in this respect that determination of eligibility should be made by the Local Union President and is not the proper function of the election committee.)

The report of the election indicates that in the election for Financial Secretary-Business Representative, Brother Kupau received 1841 votes and Brother Ito received 1747 votes and Brother Gregory L. Sanchez received 46 votes. Accordingly, the disqualification of Brother Kupau is

not determinative of the election and a new election is required.

Therefore, Local Union 745 is directed to conduct a new election between candidates Sanchez and Ito in accordance with the Constitution and Laws of the United Brotherhood and with proper notice to the membership.

*Jurisdiction*

On July 6, 1978, Kupau sent a letter to Sidell charging the officers and Executive Committee of Local 745 with violation of § 31J of the parent's Constitution (hereinafter "Constitution") in that he was not being installed as Financial Secretary-Business Representative although he was elected to that position. The July 21, 1978 Sidell decision referred to above was the final decision of the General President. Section 57G of the Constitution provides that "Decisions of the General President on protests directed to the conduct of nominations or elections, or election procedures, shall be final."

On July 21, 1978, plaintiffs filed their complaint, seeking injunctive relief, *inter alia,* and alleging that this court has jurisdiction under 29 U.S.C. §§ 401, et seq., (Labor-Management Reporting and Disclosure Act (the "Act")), and 28 U.S.C. §§ 1332, 2201, and 2202. It is clear that no diversity of citizenship exists for the purposes of 28 U.S.C. § 1332 and §§ 2201 and 2202 merely provide for declaratory judgment as a remedy for actual controversies otherwise within this court's jurisdiction.

■ Plaintiffs allege that their equal rights and privileges to nominate, vote for, and participate in the affairs of the union were violated by the refusal of the union and its officers to install Kupau to the office to which he was elected. Since they claim a violation of § 411(a)(1) (Title I rights), their suit in this court is proper under § 412.

Defendants filed a motion to dismiss, contending that the conduct complained of is post-election conduct; plaintiffs are therefore in actuality alleging violation of Title

IV rights, enforceable only by suit by the Secretary of Labor pursuant to § 482 of the Act. In *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), the Supreme Court stated that Title I jurisdiction cannot be conferred by reliance on allegations which in substance charge a breach of Title IV rights. In that case, the plaintiffs alleged that certain provisions of the union's bylaws and national constitution violated the Act in that they infringed upon their Title I rights as members to nominate candidates. The Court stated that the complaining members had not been discriminated against in any way and had not been denied any privilege or right to vote or nominate which the union had granted to others. Although they were denied their request to be candidates, "that denial was not a discrimination against their right to nominate, since the same qualifications were required equally of all members." (379 U.S. at 139, 85 S.Ct. at 296.) The Court accordingly held that the district court had no jurisdiction under Title I; that the administrative and judicial procedures set out in Title IV had to be followed.

■ *Calhoon* is not applicable where, as here, the allegations of the complaint do spell out discriminatory action taken against the plaintiffs after an undisputed valid election. Plaintiffs do not challenge the eligibility requirements set forth in the Constitution and the Local's bylaws. They do not allege a breach of Title IV rights. Even if they did, they may still sue directly under Title I if their Title I rights were also breached. *Depew v. Edmiston,* 386 F.2d 710 (3rd Cir., 1967).

Defendants also cite *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). There the Court stated, 404 U.S. at 531, 92 S.Ct. at 633: "This Court has held that § 403 [29 U.S.C. § 483] prohibits union members from initiating a private suit to set aside an election [citing *Calhoon* ]." Section 483 does state that § 482 is the exclusive remedy for *challenging* an election already conducted. Plaintiffs, however, are *defending* the validity of the election.

Section 482 spells out the procedures to be taken in challenging an election where there has been a violation of Title IV rights. Under § 482(a), a member must first file a complaint with the Secretary alleging violation of § 481; under (b), the Secretary files suit if he believes there has been such violation; and under (c), if the district court finds that such violation may have affected the outcome of an election, it shall declare the election to be void.

■ It therefore seems clear that § 482 is not applicable where plaintiffs do not allege a violation of § 481 or do not challenge the validity of the election after it has been held. Subsection (a), for example, refers to the "challenged election" as being presumably valid, and subsection (b) to action by the Secretary "to set aside the invalid election, if any."

■ If neither § 482 nor § 412 is available to the plaintiffs, the plaintiffs would be left remediless even if defendants were in fact guilty of violating the rights of the plaintiffs. This was certainly not the intent of Congress and would do violence to notions of fairness and justice. The congressional intent in enacting the Act was clearly to vest in union members certain rights and the means of enforcing those rights. Even where the statute does not provide for explicit remedies to an aggrieved class, "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *Cort v. Ash,* 422 U.S. 66, 84, 95 S.Ct. 2080, 2090, 45 L.Ed.2d 26 (1975), quoting from *J. I. Case Company v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). *A fortiori,* where the statute does provide for relief in some way, that remedy should not be denied to the plaintiffs if such denial would frustrate the purposes of the statute. Accordingly, this court finds that it has jurisdiction under Title I (§ 412).

The criteria for issuing a preliminary injunction for this circuit were enunciated in *Aguirre v. Chula Vista Sanitary Service,* 542 F.2d 779, 781 (1976), which adopted the standards formulated by the Second Circuit Court:

"[A] preliminary injunction should issue '. . . upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'"

This court will examine the first set of tests.

### Probable success on the merits

There is no question that plaintiff Kupau was a qualified candidate in every respect at the time of his nomination and election except as to whether he was a "journeyman working at or depending on the trade for a livelihood" as required by § 31J of the Constitution.

An election committee, appointed by the president of the Local, was charged with the conducting of the election both by § 31J of the Constitution and § 20, ¶ 3, of the Local's bylaws. As part of its duties to "conduct" the election, the election committee initially ruled that Kupau was ineligible because of lack of evidence. Upon submission of certain documents by Kupau, the committee ultimately declared Kupau to be eligible. The documents submitted included a letter from Kupau's then employer, Waimanalo Residents Housing Development Corporation (WRHDC), a copy of a letter from Sidell to a Mr. Honda, Kupau's W–2 forms for 1976 and 1977, and a contract between himself and WRHDC.

The letter from WRHDC indicated that Kupau was employed as a "Project Manager" and his primary responsibility as such was "to coordinate the building and construction of 140 single dwelling units for [WRHDC]." The letter indicated that his duties included "working with architectural and engineering firms, supervision of office staff and assisting in preparing and awarding of construction contracts. . . ." In addition, he was "also responsible for estimating and ordering materials and supervising the renovation of a number of houses. . . ."

The letter from Sidell to Honda, dated October 27, 1977, stated in pertinent part as follows:

This will acknowledge receipt of your letter of October 4, 1977, wherein you ask if the following members who meet the standard requirements of journeyman status, three years a member of the Brotherhood, one year in good standing in the Local, and attendance requirements at meetings are eligible to run for office within Local 745, Honolulu:

(1) Is a General Foreman with the above qualifications entitled to run for office within Local 745?

There is nothing in the Constitution or in Current Information Bulletin # 158, dated March 8, 1971, and entitled "General Executive Board Standing Decision on Superintendents" that would prohibit a superintendent from holding office in a Local Union or Council provided he meets the other requirements of the Constitution unless he would come under the category of a contracting member. In that respect I refer you to Section 31 E which states in part:

". . . nor shall a contracting member be eligible, nor shall a member who has been a contracting member until twelve months have elapsed following notification by him to his Local Union in writing that he has ceased contracting."

(2) Is a Superintendent with the above qualifications entitled to run for any office within Local 745?

The ruling to # 1 above would apply.

* * *

(4) Is a Project Manager with the above qualifications, who depends on his skills as a journeyman carpenter and general foreman, to coordinate a housing project consisting of single dwelling detached units entitled to run for any office within Local 745?

The ruling to # 1 above would apply.

The contract between Kupau and WRHDC sets forth the duties of Kupau as Project Manager. The duties involved the fulfilling in behalf of WRHDC its duties as developer of the project under Section 8 of the Joint Venture Agreement, land acquisition, financing, construction, supervising and coordinating legal work, maintenance of books and records, relocation and placement of occupants and other miscellaneous work.

Since the election committee ruled Kupau to be an eligible candidate based on the documents submitted to it, it must have found him to be a journeyman working at or depending on the trade for a livelihood.

After Ito filed his protest with Sidell, Sidell wrote to the recording secretary of the Local, Masao Shiroma, directing him to file with Sidell "promptly an answer to the protest setting forth fully all facts relating to this matter, together with a statement of the Local Union's position with respect to the statements set forth in the protest." Approximately two weeks later, the Local's president and recording secretary both submitted a letter with accompanying exhibits to Sidell. The letter reported the results of a meeting of the "Local Union's Executive Board" held on July 12, 1978. The letter indicated that the position of the "Executive Board" was that Kupau was not eligible to stand for election because he had not been a "journeyman working at or depending on the trade for a livelihood." The vote of those present at the meeting was seven in support of that position with one abstention. Of those who voted in support, six were also candidates for office of the Local on the same slate as Ito, who filed the protest. Kupau was not notified of the meeting and was not offered the opportunity to submit evidence on his own behalf. The letter further stated that Harry Brogden, who was chairman of the election committee, indicated that Kupau was deemed an eligible nominee because the evidence available to the election committee did not indicate that WRHDC (Kupau's employer) "was not a building contractor." His name was left "on the ballot under the assumption that [WRHDC] was a building and construction contractor."

Although the Local bylaws provide for an "Executive Committee" consisting of the officers and the chairman of each unit (the unit chairman being only an advisory member without vote), no unit chairman was invited to attend the "Executive Board" meeting.

On July 21, 1978, the General President issued his decision. No hearing was extended to Kupau, although he did submit a letter dated July 13, 1978, stating his position. On page 3 of the decision, Sidell states:

> Brother Kupau also does estimating and ordering materials and is responsible for the supervision and renovation of a number of houses. Such duties do relate to the trade but in this case they are incidental to Brother Kupau's primary function. They are in addition to his primary duties and under the circumstances do not establish him as working at or depending upon the trade for a livelihood. It appears that Brother Kupau is primarily a management employee of his employer, with some supervisory duties relating to the trade, but the fact that Brother Kupau and his employer find his skills in carpentry useful is not sufficient to establish him as working at the trade for a livelihood.
>
> Accordingly, I find that Brother Kupau is a management employee of his employer, that he has some supervisory duties which relate to the trade, but that he is not working at or depending upon the trade for a livelihood within the meaning of Section 31E.
>
> The action of the Local Union election committee in finding to the contrary is overruled. (It should be noted in this respect that determination of eligibility should be made by the Local Union President and is not the proper function of the election committee).

At the hearing before this court, Kupau testified as to his duties as project manager. His undisputed testimony indicated that his knowledge of the carpentry trade was crit-

ical to the performance of his duties and that he supervised the rehabilitation of the older houses in the project, including the use of old materials, and ordering and seeing to the delivery of new materials. Although some of his duties may not have been directly related to the carpentry trade, a substantial portion of his duties were so related and it appears that Kupau was depending on such trade at the time of his nomination and election.

The election committee had reached this conclusion and its decision was amply supported by the evidence before it. Although its chairman reversed his position when voting with the Local's "Executive Board," the reason was not that Kupau was not depending on the trade but simply because Kupau's employer was not a building contractor. Defendants have not cited any provision in either the Constitution or the Local's bylaws that require the candidate to be employed by a contractor as a condition to eligibility.

With respect to the action of the "Executive Board," even if its meeting can be deemed valid despite its failure to comply with § 21 of the Local's bylaws, its report was merely a statement of its position to the General President. The General President, prior to rendering his decision, had before him the report of the "Executive Board" together with other documents, and Kupau's letter of July 13, 1978. Kupau represented in this letter that he

> was also assigned the job of maintaining the structures that were (and some are still) occupied. Most of my time in Waimanalo was spent on the rehabilitation of these older homes. . . .

Sidell's decision nevertheless concludes:

> Brother Kupau also does estimating and ordering materials and is responsible for the supervision and renovation of a number of houses. Such duties do relate to the trade but in this case they are incidental to Brother Kupau's primary function. They are in addition to his primary duties and under the circumstances do not establish him as working at or depending upon the trade for a livelihood.

It is the opinion of this court that there is no basis for Sidell's conclusion. There was no inquiry by Sidell as to how substantial Kupau's duties of supervising and renovating the houses were. To classify them as being "incidental" without such inquiry smacks of arbitrariness. Even if such duties were in fact incidental to Kupau's primary duties, if such duties were nevertheless an integral part of Kupau's employment that without them he would not have been accorded employment as project manager, he would still have depended on the trade for his livelihood.

■ The documentary evidence together with the testimony adduced at the hearing of this matter show a calculated and deliberate effort by the defendants to unlawfully deprive the plaintiffs of some of their Title I rights conferred by § 411(a)(1). Plaintiffs' right to nominate candidates and to vote in elections would be meaningless if, after having nominated and voted for a successful candidate, they are nevertheless deprived of his services as an elected official due to defendants' concerted actions to subvert the results of a valid election. Success on the merits of this action by the plaintiffs is not only probable, but a virtual certainty.

*Possible irreparable injury*

Defendants argue that Kupau should not be granted injunctive relief to the extent of installing him in the position to which he was elected because if he were to ultimately prevail, he can be recompensed for loss of wages. The loss to Kupau by depriving him of such office, however, cannot be measured by monetary payment alone. Defendants contend that "the damage to him if he does not get the job does not compare to the damage he can do to the union if he does get it." Kupau was elected by his fellow union members. He is entitled to the administration of the office to which he was elected. For each day that he is deprived of the rights, privileges and prerogatives of such office, to that extent is he being irreparably injured. This may also be said to be true for the other two plaintiffs,

for perceived "damage to the union" is in the eyes of the parties who are not in power.

*Scope of injunctive relief*

 Aside from the factual determination by this court, it should be noted that: The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide. (§ 482(a))

In view of the direction of the cited statutory language and the conclusion of this court that plaintiff Kupau would in all likelihood prevail on the merits as to whether he was eligible to stand for election to the office for which he was elected, and the finding of continuing irreparable harm to the plaintiffs,

IT IS HEREBY ORDERED THAT:

1. Within ten days from the date of this Order, plaintiff Walter H. Kupau shall be installed by defendant Local 745 as its Financial Secretary-Business Representative;

2. Upon such installation, defendant Masayuki Yamamoto shall vacate said office; shall no longer serve as Financial Secretary-Business Representative pro tem; and shall at that time turn over to said Kupau all files, records, and books of accounts ordinarily kept in the custody of the Financial Secretary-Business Representative of Local 745;

3. All defendants, their agents, employees, and representatives are enjoined and restrained from interfering with the foregoing installation and the turning over of the files, records, and books mentioned in paragraph 2 above;

4. All defendants, their agents, employees, and representatives are enjoined and restrained from continuing in employment employees and organizers appointed by defendant Masayuki Yamamoto in his capacity as Financial Secretary-Business Representative pro tem of Local 745 beyond the time that plaintiff Kapau is installed as Financial Secretary-Business Representative, without the consent of said Kupau;

5. Security in the amount of Two Hundred Fifty Dollars ($250) heretofore deposited with this court by the plaintiffs shall continue as security required by Rule 65(c), Fed.R.Civ.P.

6. This Order shall continue in effect until modified or terminated by this court..

Accordingly, defendants' motion to dismiss is denied.